We will hear argument first this morning in Case 24-362, Martin v. United States. Mr. Giacomo? Mr. Chief Justice, and may it please the Court, Congress amended the Federal Tort Claims Act in 1974 to ensure a legal remedy for the intentional torts of federal police. The text of the law enforcement proviso is phrased affirmatively as a freestanding rule. With regard to acts or omissions of investigative or law enforcement officers of the United States government, the FTCA shall apply to any claim arising out of six intentional torts. The United States is therefore liable for these intentional torts when committed by FBI agents empowered by law to execute searches, seizures, and arrests. Petitioners bring the claims Congress expressly permitted, but the 11th Circuit held that sovereign immunity bars them. As a result, the Court asked the parties to address two questions. First, whether the supremacy clause bars FTCA claims. The answer is no, and the parties agree. As a federal statute, the FTCA is protected by federal supremacy, not restricted by it. Second, whether the discretionary function exception is categorically inapplicable to proviso claims. The answer is yes, for two distinct reasons. Read in harmony, the provisions cover different categories. Once a plaintiff satisfies section 1346B1, by alleging the elements of an intentional tort, the discretionary function exception does not apply because intentional torts require unlawfulness. There is no such thing as a discretionary intentional tort. Read in hostility, assuming interstatutory conflict, the text informed by familiar canons of construction in this Court's precedent demonstrates that Congress gave the proviso's waiver of sovereign immunity the last word. The proviso is the clearest statement of liability in the entire FTCA. So the government's argument in this case, and the 11th Circuit's holding below, invite a simple question. If even proviso claims Congress amended the statute to affirmatively guarantee are barred by sovereign immunity, what is left of the Federal Tort Claims Act? I welcome the Court's questions. How broadly does the proviso extend? Well, if this Court reads the proviso in harmony with the discretionary function exception, it doesn't expand any more broadly than it needs to, to make sure that those two don't come into conflict. But if the Court presumes that there is conflict, Your Honor, then it would extend, supersede the other exceptions. So in this case, how would it apply? In this case, it would apply because the Court would simply say, the discretionary function exception doesn't apply to this category of claims. The law enforcement proviso does, and that's the end of the analysis for the second question presented. So how do we know in statutory interpretation how far a proviso like this applies? Well, Your Honor, there are a number of statutory canons of construction, and I think the answer to this specific question here is we know that it extends beyond simply subsection H, because Congress stated it as an affirmative freestanding rule, as opposed to somehow being parasitic to the language before it in subsection H. Well, wouldn't you expect it to be placed someplace other than in one subsection after a colon? So I would say as a general rule, Your Honor, the answer would probably be yes. But the reason the answer is no here is because when Congress enacted the law enforcement proviso, it understood that the only barrier to liability for the United States was the intentional torts exception, meaning Congress's understanding of the discretionary function exception is the same as the one I'm articulating here today. And you get that from what? The legislative history? No, Your Honor, we get it directly from the language of the law enforcement proviso, but the legislative history, or at least the context in which this amendment was made, make very clear that our interpretation is the correct one. I guess I don't understand why in absolutely every case you say the two are mutually exclusive. I mean, isn't there a possibility? I mean, I completely understand your view that on the facts of this case, given the origins of how the law enforcement proviso came into being, it was a wrong house raid scenario, just like the one that you are addressing here. I understand how you say that this should not be a situation in which the claims are barred. But does reaching that conclusion require us to say that there can never be a situation in which the discretionary function exception applies in the law enforcement context? That seems to be what you're saying. Those two are just totally separate. And I wonder whether the kinds of policy determinations that I thought the discretionary function was about could arise in some law enforcement circumstances, albeit perhaps not here. So let me say a few things, and then maybe we can have a dialogue about how this would operate. But to answer your question, no, certainly the petitioners in this case do not need this broader rule to be articulated for us to win this case. This is the quintessential proviso case. This is the type of case that motivated Congress, as we know from all the news coverage and the language of the statute, to enact the proviso. But, of course, we're offering this answer in response to the second question that the Court granted here, which is asking categorically how these two things interact. But to get then to that question, it's simply the case that, as we can see from this Court's precedent addressing the discretionary function and the broader intentional torts exception since 1946, there's been no overlap even between those categories. And so now we're moving into the space with intentional torts committed by law enforcement officers, where there simply can't be a situation where you're exercising the type of discretionary function that the exception in 2680A covers, where you're also somehow committing an intentional tort, because those intentional torts will all hinge on some portion of the elements or defenses being there's a lack of legal justification, there's no probable cause, or something along those lines. So, I don't think it was quite fair to say that everybody agrees on the first question. Amikai doesn't agree on the first question. But putting that aside, because Amikai could address Wynne, and I understand your argument on that first question, I believe it's that Wynne, which was the basis of this circuit's decision, was a case involving state law conflict with federal law. There's no conflict here, because federal law is what makes the officers liable, correct? That's correct, Your Honor. So there can't be a sovereign immunity preemption of federal law itself? That's correct, Your Honor. All right. Now, going to the second point, there are 12 exceptions besides the law enforcement exception at issue here. I don't think you quarrel with the proposition that if a police officer assaults someone in a foreign land, which is another proviso among those 12, that the intentional tort provision would not control, correct? That's correct, Your Honor. What you're asking us to do is to say 11 of the 12 other exceptions are still operative against the law enforcement proviso, but only this one, the discretionary one, is not. Is that your position? Not quite, Your Honor. Well, but that's what it sounds like to me, because if the other 12 are applicable, because the text itself of the law enforcement provision says that the provisions of this chapter, and the chapter includes all 12 of the other exceptions, shall apply to any claim for a police officer's assault and battery. Yes. So if I could clarify what I mean, Your Honor. As we articulate in the briefs, we have two separate paths and two different interpretive methods for how the court could express QP2. On the first path, which is the harmony approach, there is not any overlap between Provision A and Subprovision H, and so you don't need to get into what to do if there's a conflict. If the court, as the government asks, assumes that there's a conflict here, even though none was found below in the 11th Circuit, then our analysis would extend beyond the reach of Subsection H. And to address your specific textual question about the language of Chapter 171, the government actually agrees with us at Footnote 3 of its brief, where it says the appropriate natural reading of that means that the Chapter 171 other than Section 2680. And the reason why that's the case is because that same language appears in the preamble of Section 2680, and it also appears in Subsection C and Subsection H. And so to take the position that Subsection 2680 would cancel itself out would require the court to read that language differently in the preamble than how it would in Subsection C and H. It does seem to me that what you're asking us to do is to answer the question we didn't grant cert on. You're asking us to say that an intentional tort is never discretionary. As Justice Katonji-Jackson mentioned, I'm not quite sure that's true. The case involving the Secret Service agent who arrested someone who appeared to be threatening a protectee, under state law, if that person was not engaged in conduct that directly appeared to be threatening, that might not be an intentional tort, a false arrest. And yet, I think there's enough measure of discretion of deciding when someone could be a threat to the president or to the protectee that would fall within the discretionary. So let me respond in a few ways, Your Honor. First was your note about the scope of the second question presented. So I would say that our arguments here fall squarely within that scope because, as we explained, to understand whether there's a categorical application of one provision to the other, of course we need to know what the categories are to see if they overlap at all. And that's not some sort of word games from us. If you read the government's bio at pages 21 and 22 where they propose the language for what this Court ultimately adopted as QP2, they follow on with the next sentence explaining that what's wrong with our position is that it mischaracterizes the scope of the discretionary function exception. And so that question is not only explicitly in the language of question presented. I'm not sure because there's a huge circuit split in a lot of talking about how to define the discretionary exception. Judge Bibas has a wonderful concurrence in which he says it's been read too broadly. I might be sympathetic to that argument, okay, but I don't know whether we should be answering it. So I agree that the Court shouldn't be answering that broader question. And to clarify, in our cert petition, we relied on Judge Bibas' articulation of there being three separate circuit splits. We offered a fourth as well. And the one articulated in section 2A of our cert petition is the one we're talking about here, this question of whether the law enforcement proviso and the discretionary function exception interact, and if so, what happens. And this Court, of course, granted on that narrower question, which now asks the Court only to consider what to do with intentional torts and torts that are also potentially coming to play. So why wouldn't a perfectly sensible approach be to say you might lose on whether the proviso applies outside of H and send it back for further consideration of the discretionary function arguments that you've made before us that Judge Bibas has raised and that are the subject of I don't know how many circuit splits. Wouldn't that be a sensible course? So the reason I would suggest that the Court doesn't take that approach, Your Honor, is that that would effectively be the Court overruling the Nguyen decision, but leaving in place all the other bad decisions like Shivers. We would leave in place everything as we found it, to be sure. And I don't doubt that there's an interesting circuit split that might merit our attention sometime soon. But this is an awkward vehicle to address it, given that it really wasn't teed up for us that way, because of the peculiar nature of circuit law below. So I would say, Your Honor, as the government argued in its bio for asking this separately phrased question to be taken, it said this is actually the threshold question, not for QP2. I understand that, but I think it thought a different version of it was the threshold question, and that is how far does the proviso extend? Does it extend beyond H? Well, Your Honor, to be— I can understand how you would read it differently, but I think that's what the government was asking us to decide. Well, Your Honor, I would just point out again, at the bio at 21 and 22, they articulate this point, and they say that resolving this question of QP2 is threshold to QP1, because the Eleventh Circuit's articulation of the Supremacy Clause bar is effectively just an importation of what it understands the discretionary function exception to be. And so if this Court were to only address QP1, it would essentially be resolving the question only for the Eleventh Circuit, but leaving all the other circuits— Look, I would answer both QPs, I think, but I'm wondering whether saying the proviso doesn't extend beyond H, but leaving you to argue below that the discretionary function exception doesn't include unconstitutional acts, intentional torts. And that would be something you could argue below. Now, if I can just—you can respond to that, but before I let you go— Okay. I'll be up here. Well, I got a lot of friends who want to have their chance, too. I'd also like you to address the government's suggestion that we shouldn't address the Supremacy Clause question, because we don't need to in this case. Your thoughts about that. Sure. So the first question on why the Court shouldn't simply say the answer is that there isn't a categorical situation for QP2 and send it back is that then we go back to the Eleventh Circuit, where the case law is such that there is no constitutional exception, even. And so you're sending the petitioners back down into the Eleventh Circuit, where even the government agrees that the Eleventh Circuit precedent, which will say it doesn't matter if the Constitution's been violated, you can still act with discretion, is wrong. And we'll be stuck there with the hope of perhaps getting en banc review of the Nguyen decision without having to confront the way that the discretionary function exception actually overlaps with the law enforcement proviso. Now, to answer the second question about why or whether this Court should address QP1, of course it should address QP1. But the point that the government is trying to get the Court to decide QP2 on its preferred new text of QP2, which is whether it extends to the other 12 subcategories, that just goes to show that these two things are basically the same. The supremacy clause bar of the Eleventh Circuit is just a dressed-up version of the discretionary function exception as the Eleventh Circuit and many of the other circuits have too broadly understood. And so this Court can simply address by citing to Gaubert, here's where we know the line comes for the edge of the nook and cranny, to still say, even with that line, maybe the further line not fully defined, we know that intentional torts committed by law enforcement officers are not going to touch that form of discretion as Congress articulated in Subsection A. MS. GOTTLIEB So would it be helpful to you that if we were to send it back on Justice Gorsuch's suggestion that we just address the categorical separation between the two, would it be helpful to say something about whether or not we are speaking to the scope or extent of the discretionary function exception? I mean, I understood your response to Justice Gorsuch to be that if you just say no categorical exclusion of discretionary function, it goes back and the Eleventh Circuit is going to say, fine, discretionary function applies, barred. And that your point is that even if there's no categorical preclusion, we still have to have a debate about the extent to which the discretionary function actually covers these situations or the one that you've presented in this case. MR. GARRETT That's correct. And I would even go a little bit further, Your Honor, and say, if the ultimate result is this Court takes the government's selected approach and just does answer basically each QP with a one-word answer and send the case back down, then it will also implicitly be saying that the exact sort of case that Congress amended this Act to allow is going to be doomed by the Eleventh Circuit's precedent, which inverts the Galbraith standard and says, unless something specifically tells you in federal law you can't do anything, you have open discretion to do it. We wouldn't be saying that. All we would be saying is that we're deciding this particular case. I know you would like us to go quite far, but all we would be saying is that the proviso applies only to H. And the Eleventh Circuit's supremacy clause cases appear to be a workaround based on them trying to work around their prior determination that the proviso applies across the board. Now, that may not be good for you. I understand that. And that's why you're arguing what you're arguing. But as far as the development of our case law is concerned, why should we go further than that and get into this enormously complicated question about the scope of the discretionary function exception? So, Your Honor, I wouldn't ask the Court to get into the more enormously complicated aspects of the discretionary function exception. Again, we're simply saying there's a line where it's obviously not going to touch things like the law enforcement proviso. And the reason that this Court should get into that question here is because, as you explained, the Eleventh Circuit's workaround for what to do with this is its supremacy clause bar. But many of the other circuits have created workarounds. They're just messier and built into a factual analysis of each case, where, for instance, all of the other cases except for Linder have held, well, of course, the discretionary function exception can't reach the sort of heartland law enforcement things. But maybe in this case, because it's an INS arrest or because it's something outside of what we perceive to be normal law enforcement, things are different. And so the line is being drawn right now by all the circuits. They're just confused about where to draw it. And because of that confusion, the line varies from circuit to circuit. And so if this Court is going to take this issue up and provide any clarity, it should provide clarity to all of the circuits instead of just the Eleventh Circuit. And I think that's doubly important here because, again, Congress went out of its way in 1974 to go through all the steps it needed to go through to specifically amend the FTCA to say this very affirmative freestanding thing, if you're a federal law enforcement who commits an intentional tort, we, the United States, not you, the officer, will pay for it to make sure that there's a remedy for the innocent victims of your mistake or wrongdoing. And so it's more important than simply just answering a categorical question. There needs to be some guidance on this so that this statutory provision actually has effect. Because going back to Justice Jackson's discussion with me, the result in this case of the Martin family having no remedy here is that that provision has no effect. It's a complete nullity if that is the outcome of this case. It does seem to me that we need to address the Supremacy Clause question because if we were to send this case back on the narrow grounds we've been discussing with you and that you're resisting so well, it's possible that the Eleventh Circuit could wind up agreeing with you that the discretionary function exception doesn't reach your case. Perhaps that requires the en banc court's intervention, but it might do so. And then it would still have its Supremacy Clause jurisprudence that would bar your case. So at the very least, it seems to me that we need to address that. Do you see it differently? And what are your thoughts about that? No, no, Your Honor. I think the court should definitely address the Supremacy Clause bar as the Eleventh Circuit articulated it. Because that bar, of course, as it's phrased, as any actions that are within the nexus of federal officials' acts and within the furthest reaches of the Constitution are going to be provided Supremacy Clause protection basically takes away most of, if not all of, the thrust of the FTCA, which, of course, is why my friend Amicus on the other side has said, well, maybe we can just go back to private bills, which is, I think, the main mischief that Congress was intending to remedy with the FTCA in the same way that the mischief that they were trying to remedy with the proviso are the very sort of intentional torts committed by the FBI agents in this case. Justice Thomas, anything further? Justice Alito? Justice Kagan? Justice Kavanaugh? Justice Jackson? Thank you, Counsel. Thank you, Your Honor. Mr. Liu? Mr. Chief Justice, and may it please the Court, this Court granted cert on two questions, one about the reach of the proviso in Subsection H and the other about the Supremacy Clause. To resolve this case, this Court need only decide the question about the proviso, namely, whether the proviso in Subsection H modifies the discretionary function exception in Subsection A. The answer is no. Congress placed the proviso in Subsection H, and given that choice, the proviso modifies only Subsection H. It does not modify the discretionary function exception in A. That exception, therefore, bars Petitioner's claims. And because it does, this Court need not reach the other question presented, which asks whether the Supremacy Clause bars those claims. The Eleventh Circuit resorted to the Supremacy Clause only because under circuit precedent, the proviso in H modifies the discretionary function exception in A and renders that exception inapplicable. But if this Court rejects that interpretation of the proviso, it should simply affirm on the ground that the discretionary function exception bars Petitioner's claims without reaching the Supremacy Clause issue. Petitioners have injected a third issue into the case, whether their claims satisfy the discretionary function exception in the first place. In other words, whether they satisfy the two-part test this Court articulated in United States v. Goebbert. But that issue isn't fairly encompassed by the questions presented, and it's not independently cert-worthy. In any event, if this Court does reach the issue, all they would need to do is reaffirm Goebbert, because Petitioner's claims clearly satisfy Goebbert's test. I welcome the Court's questions. Do, can a proviso such as this extend more broadly than your, than this case? So the presumption is a proviso applies only to the thing that it's attached to, but there are cases where the Court has found that presumption rebutted, and has thus read a proviso to state a general freestanding rule. We don't think there's any indication here, any basis for finding the presumption that the proviso applies only to the thing it's attached to be rebutted, and so we think the general principle that a proviso applies only to the thing it's attached survives and applies here. Well, I'm sorry, I'm having a, I'm sorry. Your approach puts a lot of weight on strict adherence by drafts, draftsmen in Congress to organization along that lines. It's certainly plausible that H was the main thing that the proviso was addressed to, but not necessarily the only thing. Yeah, I don't really think that's plausible. I mean, put yourself in the shoes of the 1974 Congress. It had before it all of Section 2680, the lead-in language, plus 13 exceptions, starting with A, ending with N, and if Congress had wanted to create a universally applicable proviso, i.e. one that applied to all 13 exceptions, I don't think they would have put it in the middle, in H. No, that's the most logical place to put it, but heroic assumption to think back to 1974 and put myself in Congress's shoes, but it's also, you know, they got a lot of things going on. They're very busy, and if it applies logically more generally, I don't know why we wouldn't at least entertain that. Well, I don't think it, I mean, I don't think it applies logically more generally. All the textual and structural indications indicate that Congress put it in H because it wanted to apply in H, and so it's not just that it's in H, it's also that Congress used the phrase provided that, which is words Congress uses when it wants to introduce a proviso, which then triggers this presumption that it applies only to the thing it's attached. It's the fact that Congress, before the provided that, used the colon, which suggests that a connection between the proviso and the thing that immediately precedes it. It's the fact that Congress put a period after the proviso, which then separates the proviso from every other exception in the statute. It's the fact that even my friend concedes that it would be implausible for Congress to have wanted the proviso to apply to certain exceptions, especially subsection K, which is the foreign country exception. No one thought Congress wanted to open the door to the application of substantive foreign law in cases involving police conduct. It's the idea that there's a similar parallel proviso or exception in subsection C, and no one thinks that that exception applies to all the other exceptions. I think everyone agrees that that exception applies only to subsection C. And so I think you have all the relevant... So counsel, what was Congress doing? It passed this proviso because of the Collinsville raids. Their officers, without a warrant, broke into a home. They tied up people. They were as threatening as in the current situation. Why bother if we accept that they had the discretion to think there was danger? With or without a warrant, the emergency doctrine exception would let them break down a door. So what was Congress thinking? So I don't think that the conduct in the Collinsville raids falls within the discretionary function exception. But why? Only because there was no warrant? Because their conduct was well beyond the discretion conferred on them, because it violated clearly established... Ah, that's interesting, because in Garbert we said, if an official drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception, discretionary exception, would not apply. That was because, and I'm quoting, although driving requires the constant exercise of discretion, the official's decision in exercising that discretion negligently, I'm putting in that word, can hardly be said to be grounded in regulatory policy. I mean, I don't see the difference between that and saying that an officer's action in using a GPS to break into the wrong house has any policy related to it. It's like driving negligently. You got to that house by mistake. You drove negligently and hit someone. So I don't understand how the act of going into a wrong house can be discretionary. Well, we understand the discretion here to be the discretion as to how to identify the target of a search warrant. Oh, he had it identified. He got the right target. He just had the wrong house. It's not a question of, did he make a mistake in his warrant application about this individual being a drug dealer? All right. There, I might agree with you. Okay. I'm talking about a wrong house raid. He has the right target, the right house, but breaks into the wrong one. Right. And it's because, as the courts below found, of a reasonable mistake that the officer made. That's the issue. Is that consistent with Gobbert? And I'm asking you to explain to me how that formulation is consistent with Gobbert. Well, I would just run the conduct here through Gobbert's two-part test. So step one of the test asks whether there is a federal law or statute or regulation that specifically prescribes a course of action that the employee needs to follow. There is. Go get a search warrant for a drug dealer's house. Now, what policy says, now go search a house that's not the drug dealer's house? Well, no policy says that. And that is negligent driving. No policy says, don't break down the wrong house, the door of a house. No, excuse me. Of course, of course. Don't traumatize its occupants. Really? Of course it's the United States policy to execute the warrants at the right house. Oh, I should hope so. But stating the policy at that high level of generality doesn't foreclose or prescribe any particular course of action in how an officer goes about in identifying the right house. And as the district court found at 52A, the sort of discretion left to the officers here to determine the right house is filled with policy considerations. The officers here were weighing public safety considerations, efficiency considerations, operational security, the idea that they didn't want to delay the start of the execution of the warrants because they wanted to execute all the warrants simultaneously. Those are precisely the sorts of policy trade-offs that an officer makes in determining, well, should I take one more extra precaution to make sure I'm at the right house? Here, petitioners suggest, for example, that the officer should have checked the house number on the mailbox. The address of the house before you knock down the door?  And as the district court found at 52A, that sort of decision is filled with policy trade-offs because checking the house number at the end of the driveway means exposing the agents to potential lines of fire from the windows. How about making sure you're on the right street? And how does that work? Just the right street. No, I mean, I was just going to say… Checking the street sign? Is that, you know, asking too much? What I would say is exactly what the courts below found, which is that the officers here made a reasonable mistake as to where they were. The allegation from petitioners' claims is that they should have done more. They should have stopped and got out of the caravan of vehicles and checked the street sign. But I guess, Mr. Liu, the question is, how does that really differ from Colesville? I mean, the problem that I think is sort of what is happening in your analysis is that you say that the Colesville conduct does not fall within the discretionary function exception, which seems to me to be a concession that even if we agree with you that these aren't in two separate categories, law enforcement and discretionary function, we still have to figure out how broad the discretionary function exception is, which is the question you say we're not allowed to answer. The conduct in Colesville flunks the first step of the Gobbert two-part test. Is that the discretionary function test? Yes. All right. Well, so then we are having to assess the scope of the discretionary function in this conduct, in this context. I don't think so. I don't see how you can say we have separated that out of the question presented. We can't look at it. And you're still answering these questions in this way. No, because I think this case comes to the court on the assumption, as the courts below found at 17 to 18A and at 58A, that the conduct here did satisfy Gobbert's two-part test. Now, the only out that petitioners have left then is to say that the proviso nevertheless removes those claims from the scope of A. That's what I took to be the threshold statutory question that this court granted cert to decide. If I may just address one point that my friend raised. I'm sorry, counsel. You're doing exactly what the other side is doing. You are begging the question, which is how far does this discretionary exception goes? The other side wants an absolute rule that all intentional torts are not covered. You want the opposite, which is if there's any discretion in the activity, then no negligences or intentional actions are covered. No, I don't. The two of you are going into separate corners. I'm not asking for an absolute rule. I'm asking for the court to just stick with its attesting Gobbert. Yes, because you got a great decision below. But is that fair? Sometimes that test will result in the United States being exposed to liability. Sometimes it won't. It's not an absolute test. If I may just address my friend's suggestion that the proviso did nothing when Congress enacted it, we don't view that to be the case. Before the proviso was enacted, officers like Guerra had two layers of protection from liability. They had the discretionary function exception, and then they had an extra special layer of protection provided by subsection H, which gave the United States blanket immunity for any claim based on a particular type of tort. What the proviso did was remove that special layer of protection, but it left in place. That is so ridiculous. Congress is looking at the Collinsville raid and providing a remedy to people who have been wrongfully raided. And you're now saying, no, they really didn't want to protect them fully. They were just going to take them out of that exception, but leave in the discretionary exception. I gave you discretion in Collinsville. The officers are permitted to break into a home if they think an emergency existed. That's why those officers did that. They may have been wrong about the emergency existing. They may have been wrong about the warrant law. But under your test, it's their discretion to arrest when they think there's an emergency. No, what we understand the proviso to do is to remove that blanket special layer of protection in H. That requires the U.S., in these types of cases, to battle it out under the discretionary function exception. And that's quite significant because there's a large set of cases that are going to flunk this court's two part test in Galbert, chief among them, the raids in Collinsville. And so by removing the proviso. That's right. Flunk it. All right. Thank you. So by removing the proviso, it exposes, it requires the United States to hash it out under the discretionary function exception. As I say, there are plenty of cases that are going to fall outside that discretionary function exception. Thank you, counsel. Is there anything else you wanted to add to that point?  Thank you. Thank you. Justice Thomas. Justice Alito. Just so I'm clear, we can say the supremacy clause is not a bar. I know you don't want us to reach that, but we can say that. We can say the proviso does not apply beyond H. And we can stop there and leave questions about how to apply the discretionary function exception to the facts of this case for remand. Correct? That's right. I would say that the courts below already did that analysis. And so a remand. But if so, they can say that. They can say that again on remand. Thank you. Thanks. Justice Barrett. Justice Jackson. Can I just, before you leave the podium, can I just ask you about your point that we should not reach the social supremacy clause question? I guess I have a concern about our jurisdiction in this particular set of situation, this particular situation, because I'm looking at 28 U.S.C. 1254, which outlines our certiorari jurisdiction. It allows us to hear appeals from lower courts by writ of certiorari granted upon the petition of any party. And the only question that we're looking at now that was put to us by petition is the supremacy clause question. The government, in this case, asked us in the bio to add what we now call the second question. And so I guess I don't understand that, you know, I appreciate that we could also hear that question. But I'm a little worried about suggesting that we can exercise jurisdiction to resolve a question that never appeared, only a question that never appeared in any cert petition before us. Yeah, I don't think that's quite right. I understand the granting of the petition to be necessary for this court to exercise its power. But that once it's granted the petition. Then we can totally change it and add questions that don't exist, that weren't there. I do think it's within this court's discretion at that point to decide for reasons of prudence or otherwise exactly what questions it wishes to decide in reviewing the judgment below. Because that's ultimately what's being reviewed is the judgment. Okay. Thank you, counsel. Mr. Mills. Mr. Chief Justice, and may it please the court. The FTCA does not make the United States liable for lawful acts of its agents. That is true for three reasons. First, section 2674 makes the government liable only to the same extent as a private person in like circumstances under state law. And a private person cannot face state liability that conflicts with federal law. Second, section 2674 reserves any other defenses, including those only available to government agents. Government agents are not liable for acts within their federal duties. Third, a federal court in an FTCA case stands in state court shoes, which means it must consider applicable federal law. Otherwise, the United States would be liable where a private person and a government agent would not, contradicting the statute. Thus, the United States can have a supremacy clause defense in FTCA cases. I welcome the court's questions. I don't quite understand your argument. I think you suggest that you can raise sovereign immunity as a defense, a private individual? No, Your Honor. My argument is that a private individual can raise the supremacy clause as a defense to state tort liability. And they have in this court's case law. So Hunter v. Wood involves this court giving a supremacy clause defense to a private railroad ticket agent who was following federal law. Do you think that a private individual can enforce federal law? Yes, Your Honor. So I think Hunter is a perfect example of that. There the railroad agent was following a federal court order. Here you have something similar with the agents following the warrant. You also have that sort of flavor in other cases. For example, when an airline denies boarding to someone who under FAA regulations doesn't show the proper ID, that's another example of a federal law duty. Why do you think the 11th Circuit took this tact of sovereign immunity? So I don't dispute the party's contention that there seems to be a concern based on the 11th Circuit precedent and its interpretation of the intentional tort proviso. But more importantly, I think the 11th Circuit was right. I think their position follows from Section 2674. But I guess, Mr. Mills, I mean, you're quite right, of course, that private parties can raise preemption arguments and that the United States could raise the same sort of preemption arguments. But I guess the question that I have is, how is that really relevant to this case? Because that's not the nature of the immunity defense that the 11th Circuit applied here. It wasn't a statutory preemption sort of argument. It was a basic sovereign immunity kind of argument. I disagree, Your Honor. I think it was a standard preemption analysis, just like this Court's decision in Neagle. And so I think Neagle is a prong of this Court's statutory preemption analysis that obviously comes up more rarely than the typical preemption cases, but it involves the exact same conflict between federal law says, you must do this, and state law says, you can't take this action, reasonably necessary to do that. So I think that you do have the same implied conflict that you would in other statutory preemption cases. And I think the private person, you know, the key there is that it's in like circumstances. So, you know, as an example, I would point the Court to 28 U.S.C. 530B, which says federal government attorneys are subject to state rules of professional conduct, quote, to the same extent as other attorneys in that state. And the lower courts and the federal government have read that language. Look at their bio in 161323 to mean that a preemption defense is available, even though the federal statute references or incorporates the state rules. The government says no attorney can be subject to a state rule that conflicts with federal law. And because government attorneys are subject to them only to the same extent, therefore, neither can the government attorneys. And that's the exact same point I'm making here. No private person can face state liability that conflicts with and thus is preempted by federal law. And so within the scope of 2674, neither can the United States. But even if you set aside the private individual aspect, you still have the third paragraph in Section 2674, which provides any other defenses, including defenses available to government agents. On the petitioner's theory, Neagle, in the famous case where he protected Justice Field, escapes liability because he had a federal duty. But on the petitioner's theory, today, he could turn Mrs. Terry, the wife of the assailant, could turn around and sue the United States for damages, and the United States would be civilly liable, even though Neagle was performing his federal duties. Same thing in this case. If the agents had gone to the White House under their theory and state tort liability would have applied under whatever the state law happens to be, the United States would be civilly liable for money damages for going to the White House. So I think that underscores that there has to be a supremacy clause defense available when the federal agent was acting within their federal duties. And then the last aspect I would point to is this Court's decision in Richards and Hess, where the Court said you have to consider applicable federal law. Again, the Court said that's the only way to make sure that the statute doesn't extend more liability to the United States than that faced by private individuals or the government agents. Here, applicable federal law includes superseding federal duties, and that follows directly from this Court's decision in Neagle and the rest of the supremacy clause defense cases we cite. Mr. Mills, to be clear, the 11th Circuit is the only circuit that has adopted this particular line of thinking with respect to these kinds of cases. Is that right? That's right. No other court has considered it one way or the other. And how long? Do you know how long this has been, the precedent in the 11th Circuit, the application of the supremacy clause in this way? Since 2009. Thank you. And in that 15 years, there have only been three cases before the 11th Circuit. The supremacy clause defense more broadly, the Cobb article we cite in the brief says that since 1787, there have only been 59 cases involving a supremacy clause defense. So contrary to the petitioner's argument, this is not a defense that would swamp the FTCA. It simply means that when the federal agents are performing their federal duties, the United States can't be liable in money damages. Anything further? Justice Alito? Justice Sotomayor? Thank you, counsel.  Thank you, Your Honor. I'd like to respond to a few of the questions that came up when my friend from the government was discussing things with the court. The first thing I'd like to point out along the lines of what Justice Sotomayor was asking is that the government's position in this case and the 11th Circuit's decision below, their understanding of the discretionary function exception would do two things. One, it would eat up almost all of the entire FTCA. But two, more importantly, it would certainly eat up all the claims that the proviso was to provide liability for. And here, the language of the proviso itself is very direct. But the Senate report backs that language up. And there, the Senate talked about the fact that what they were doing was removing a barrier to liability, not just a barrier so the rest of the FTCA could then still get in the way, even though the officers had violated the proviso. And so to say that subsection A still applies to bar almost all of, unless you take the claims that the proviso raises would mean that Congress has enacted a completely useless law in 1974. That simply can't be the case. Even addressing it to the circumstances of Collinsville, as Justice Jackson asked questions about, or this case, Galbraith doesn't apply. The government gets around this by taking the position that the 11th Circuit has taken, which is to say, unless there is something telling you you can't do this, and the something either has to be a statute or clearly established law, you have discretion. That's not what Galbraith says. There's a whole step two to the analysis, which none of the courts in the 11th Circuit or elsewhere that take a broader approach consider. Of course, there's discretion in the colloquial sense when police are raiding a house. But that discretion is not legislative or administrative decision-making grounded in social or economic policy. It's the same discretion we see with driving a car or flying a plane or seizing horses in the Hadley case. And so it simply can't be the case that what Congress did when it enacted the proviso was to say, even though the officers in this case had a warrant commanding them to go to one address, there was discretion for them to go to another. So they should lose on step one. If we get to step two, there's no question that there was no policy here. As my friend said, the government's policy is to raid the right house. They didn't do that. The preparation is kind of immaterial to the ultimate result here. If you really, really meant to drop the pizza off at the right address, it doesn't matter. You still need to give a refund if you drop it off at the wrong address. Even then, if we look just to the concept of the conflict of the language, we assume that there's a conflict, which, again, we do not think the court should do and the court does not need to do. The decision in Alaska is on point with this case. We talk about colons and periods and indentations and the preamble. All of that stuff was available in Alaska. The government was on the wrong side of that case, and it made the arguments we're now making, and those arguments prevailed. And in fact, even the dissenting justices cited things that now support us here. Unlike in Alaska, where the proviso was limited to such claims, here we have an affirmative freestanding rule, as Justice Scalia requested. And unlike in Alaska, here it doesn't matter that this was in the middle of the set of exceptions, because Alaska was the same way. The submerged lands provision was M. This other provision was E. None of that mattered. What's very clear here from the language Congress enacted and from the fact that it took the time to add this amendment was that they wanted the claims, if they satisfied the proviso, to move forward. And it's crucial to keep in mind that if petitioners win on this issue, they don't win this case. We're fighting to get a day in court where then we can duke it out over the elements of torts and defenses under the Georgia element standard. So it's not as if this case being decided by this court will even render the government liable. We still have more steps to take. But we want to be able to take those steps, and through the law enforcement proviso, Congress said that we should be able to take those steps. Now, on the question about the second question presented in jurisdiction, I can't say whether there's a jurisdictional problem. But what I can tell you is that when we wrote RQP and then saw the government suggested language for narrowing it, we understood that to mean RQP but narrowed. If it was a completely separate issue that assumed the scope, covered our claims, we would have objected that that was an inappropriate conditional cross petition. But we didn't. And we rightly understood then that when this court did that, it was narrowing our question to the specifics that the government offered. As the government says at page 22 of its bio, that narrowing still requires the court to consider to some extent the scope of the discretionary function exception. And if it doesn't, the government's theory, which has prevailed across most of the circuits, that anything that has any element of judgment or choice is good enough to get you into that exception means that the FTCA will become largely a nullity. This covers cases like the law enforcement proviso cases, but it also covers the more run-of-the-mill cases like VA malpractice. Obviously, a doctor has as much discretion to decide which artery to close off than a police officer does which door to go to. Thank you, counsel. Thank you. Thank you. Mr. Mills, this court appointed you to brief and argue this case as an amicus curiae in support of the judgment below. You have ably discharged that responsibility, for which we are grateful. The case is submitted.